UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

MARGARET R. DEMLER,

                    Plaintiff,                    14-CV-424

          -v-

NANCY A. BERRYHILL,                               DECISION AND ORDER
Acting Commissioner OF Social
Security[1],

                    Defendant.

_____


     Plaintiff  Margaret  R.  Demler  ("plaintiff")  brings

this  action  under  Title  II  of  the  Social  Security  Act

(the  "SSA"),  claiming  that  Defendant  Nancy  A.  Berryhill,

the   Acting   Commissioner   of   Social   Security   (the

"Commissioner"  or  "defendant")  improperly  denied  her

application  for  disability  insurance  benefits  ("DIB").

Currently  before  the  Court  are  the  parties'  competing

motions  for  judgment  on  the  pleadings  pursuant  to  Rule

12(c)  of  the  Federal  Rules  of  Civil  Procedure.   For  the

reasons  set  forth  below,  plaintiff's  motion  is  granted  in

part  and  denied  in  part,  defendant's  motion  is  denied,

---

[1]
Nancy  A.  Berryhill  replaced  Carolyn  W.  Colvin  as  Acting
Commissioner of Social Security on January 23, 2017.  The Clerk of
the Court is instructed to amend the caption of this case pursuant
to  Federal  Rule  of  Civil  Procedure  25(d)  to  reflect  the
substitution of Acting Commissioner Berryhill as the defendant in
this matter.

and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## PROCEDURAL HISTORY

On June 1, 2011, plaintiff filed an application for DIB alleging disability as of September 6, 2010, due to chronic pulmonary obstructive disease ("COPD"), depression, and anxiety. Administrative Transcript ("T.") 71, 116-22, 141. Plaintiff's application was denied on October 11, 2011. T. 72-75. A hearing, at which plaintiff testified, was held on October 29, 2012, before administrative law judge ("ALJ") Donald T. McDougall. T. 40-64. The ALJ issued an unfavorable decision on December 6, 2012. T. 19-39.

Considering the case *de novo* and applying the five-step analysis contained in the Social Security Administration's regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ made, *inter alia*, the following findings: (1) plaintiff met the insured status requirements of the SSA through December 31, 2015; (2) plaintiff had not engaged in substantial gainful

activity since September 6, 2010, the alleged onset date;
(3) plaintiff's COPD, asthma, sleep apnea, degenerative
joint disease, osteoarthritis, and obesity were severe
impairments; (4) plaintiff's impairments, singly or
combined, did not meet or medically equal the severity of
any impairments listed in 20 CFR Part 404, Subpart P,
Appendix 1 (20 CFR 404.1520[d], 404.1525, 404.1526); and
(5) plaintiff had the residual functional ("RFC")
capacity to perform the full range of sedentary work. T.
22-31.  The ALJ further found that plaintiff was able to
perform her past relevant work as a secretary and that
she had not been under a disability as defined in the SSA
from September 6, 2010, through the date of the ALJ's
decision.  T. 34.

Plaintiff filed a request for review with the Appeals
Council on February 1, 2013.  T. 17-18.  On March 13,
2014, the Appeals Council issued a Notice of Appeals
Council Action granting review of the ALJ's decision and
indicating that the Appeals Council planned to make a
corrective decision to modify the ALJ's RFC
determination.  T. 112-115.  Then, on May 7, 2014, the

Appeals Council (apparently inadvertently) issued two different orders. The first order (the "Remand Order") remanded the claim to the ALJ to consider nonexertional limitations in the RFC and to obtain a vocational expert to opine on the effect of the assessed limitations on plaintiff's occupational base. T. 11-13. The second order (the "Modification Order") modified the ALJ's RFC finding to include a limitation on concentrated exposure to cold/heat, wetness/humidity, and fumes, gases, odors, dust, etc., and otherwise upheld the ALJ's findings. T. 8-9. On July 2, 2014, the Appeals Council sent a letter to plaintiff explaining that the Remand Order had been added to the electronic file in error and that the Modification Order represented the final decision of the Commissioner. T. 1-2. Plaintiff seeks review of the Commissioner's final decision in the instant action.

## **DISCUSSION**

I. General legal principles

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the

District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). This section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999), *quoting Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983). Section 405(g) limits the scope of the Court's review to two inquiries: (1) whether the Commissioner's findings were supported by substantial evidence in the record as a whole and (2) whether the Commissioner's conclusions are based upon an erroneous legal standard. *See Green-Younger*

*v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003). "The Court [cannot] defer to the Commissioner's determination if it is the product of legal error." *Wilson v. Colvin*, 107 F. Supp. 3d 387, 401 (S.D.N.Y. 2015) (internal quotation marks ommitted).

A.   <u>Relevant medical evidence</u>

Plaintiff's medical records show that she has treated with primary care physician Dr. Jihad H. Abialmouna and nurse practitioner ("NP") Lori A. Moresco of Tonawanda Medical Practice ("TMP") since March 2000. T. 144, 227-65, 322-40, 345-57. Notably, the administrative record only contains medical records from TMP from January 5, 2010 to September 20, 2012.

Plaintiff was admitted to the hospital in June 2009 after two days of shortness of breath and coughing. T. 198. The administrative record does not contain any records from this hospital admission.

On October 6, 2009, plaintiff was seen at TMP. T. 198. After noting that plaintiff's pulse oximetry was 90%, Dr. Abialmouna admitted plaintiff to DeGraff Memorial Hospital ("DeGraff") for additional evaluation.

6

*Id*.  Plaintiff was admitted to DeGraff for 10 days (from October 6, 2009, to October 15, 2009), during which time she required oxygen and a Ventolin inhaler every four hours. *Id*.  Plaintiff's final diagnoses were exacerbation of COPD, secondary bronchitis, hypertension, and mild depression.  *Id*.  On discharge, plaintiff's medications were avelox, xopenex, advair, prednisone, lisinopril, and hydrochlorothiazide.  *Id*.  Plaintiff was also started on a NicoDerm patch to aid with smoking cessation.  *Id*.

Plaintiff presented at the DeGraff emergency room on November 15, 2009, complaining of a debilitating headache that she apparently believed had been triggered by a COPD attack.  T.  211-15.  Plaintiff was admitted and a CT scan of her head and brain was performed, which was unremarkable T. 215.  Plaintiff was discharged later the same day as her condition had improved.  T. 214.

Plaintiff treated with NP Moresco at TMP on January 5, 2010.  T. 228-29.  Plaintiff reported that she was feeling better and had ceased using oxygen at home.  T. 228.  Plaintiff further reported that she had ceased

smoking in October and continued to be smoke-free.  *Id*. Plaintiff had decreased breath sounds bilaterally.  *Id*.

Plaintiff was again hospitalized at DeGraff on January 14, 2010, and an echocardiogram was performed, which showed evidence of diastolic dysfunction.  T. 200-202.  The administrative record does not contain a discharge summary or other information regarding the reason for this hospitalization or any associated diagnoses.

Plaintiff was admitted to DeGraff on April 25, 2010, for shortness of breath.  T. 219-226.  Plaintiff was diagnosed with acute exacerbation of asthma and a chest x-ray was performed, which showed no pathology.  T. 220, 226.  Plaintiff was discharged later that same day.  T. 220.

On May 25, 2010, Plaintiff treated with NP Moresco at TMP.  T. 232-33.  Plaintiff reported that she had resumed smoking.  T. 232.  Plaintiff was experiencing shortness of breath and wheezing.  *Id*.  She exhibited rhonchi and expiratory wheezes over the lungs bilaterally.  *Id.* Records of plaintiff's visits with NP Moresco indicate

that plaintiff continued to smoke through July and August of 2010.  Tr. 234, 238.

On September 9, 2010, plaintiff presented to the DeGraff emergency room with shortness of breath that had not improved with use of her nebulizer.  T. 203. Plaintiff was diagnosed with exacerbation of COPD and secondary bronchitis, and was hospitalized from September 9, 2010, to September 14, 2010, during which time she received nebulizer treatments every two hours.  *Id*.  On discharge, plaintiff was advised to continue her medications, which included cymbalta, prozac, lisinopril, and chantix for smoking cessation.  *Id*.

Plaintiff followed up with NP Moresco on September 17, 2010.  T. 240.  Plaintiff was taking her medication as prescribed but was still smoking.  *Id.*  Plaintiff exhibited rhonchi and expiratory wheezes over the lungs bilaterally.  *Id.*  Plaintiff saw NP Moresco again on September 24, 2010, at which time she reported that she was "breathing better."  T. 242.  Plaintiff again exhibited rhonchi and expiratory wheezes over the lungs bilaterally.  *Id.*  On September 30, 2010, plaintiff saw

NP Moresco for disability paperwork. T. 244. At that time, her lungs were clear anteriorly, posteriorly, and laterally. *Id*.

Plaintiff treated with NP Moresco on November 30, 2010. T. 248. Plaintiff was not smoking at the time, but was concerned about returning to work at the casino, which was smoke-filled. *Id*. Plaintiff's lungs were again clear anteriorly, posteriorly, and laterally. *Id*.

Plaintiff saw NP Moresco on February 11, 2011, at which time she was not smoking. T. 251. On March 7, 2011, plaintiff returned to TMP. T. 253. Plaintiff was still not smoking at this time, but was struggling with wheezing and breathing difficulties. *Id*. On examination, she exhibited rhonchi, wheezes, and respiratory wheezes over the lungs bilaterally. *Id*.

NP Moresco completed a Pulmonary Medical Source Statement dated April 6, 2011. T. 303-306. Plaintiff's diagnoses were COPD and hypertension. T. 303. NP Moresco noted that Plaintiff had been hospitalized "3-4 times" for exacerbation of her COPD symptoms. *Id*. NP Moresco further noted that Plaintiff had asthma attacks

on a daily basis, but these attacks were better managed by medication and Plaintiff's pulmonary doctor. *Id*. During an average attack, Plaintiff would be incapacitated for one week. *Id*. NP Moresco noted that working in a facility that allows smoking exacerbated Plaintiff's COPD often. *Id*. NP Moresco further opined that Plaintiff's impairments had lasted or were expected to last at least twelve months, and that plaintiff could: walk three city blocks without rest or severe pain; sit for fifteen minutes at a time; stand for fifteen minutes at a time; stand or walk for about two hours in an eight hour workday; and sit for 4-6 hours in an eight hour workday. T. 304. According to NP Moresco, plaintiff would require unscheduled breaks during the working day on an unpredictable basis, during which time she would need to sit quietly. *Id*. Moreover, plaintiff could: frequently lift and carry 10 pounds, occasionally lift and carry 20 pounds, and never lift and carry 50 pounds, never twist, rarely stoop, crouch, or squat, never climb ladders, and never to rarely climb stairs. T. 305. NP Moresco opined that plaintiff was to avoid all exposure

to extreme heat, high humidity, cigarette smoke, fumes, odors, and gases, dust, and chemicals. *Id*. Plaintiff was likely to be "off task" 25% or more of the time, was incapable of even "low stress" jobs, and was likely to be absent from work about one day per month. T. 305-306.

Plaintiff was seen at TMP in May and June of 2011, and was not smoking. T. 255-58. On July 26, 2011, plaintiff returned to TMP complaining of worsening respiratory symptoms. T. 339. Plaintiff was not smoking at the time. *Id*. On examination, plaintiff's lungs were hyperventilated, and she exhibited bilateral wheezing. *Id*. It was recommended that plaintiff seek breathing treatments. T. 340. Plaintiff was seen again at TMP on September 2, 2011, where she reported continuing to have difficulty breathing and wheezing. T. 337. Plaintiff was not smoking at this time. *Id*. On examination, plaintiff exhibited rhonchi, wheezes, and expiratory wheezes over the lungs bilaterally. T. 338.

On September 6, 2011, plaintiff underwent a consultative internal medicine examination by Dr. Donna Miller. T. 266-69. Plaintiff underwent a limited

pulmonary function test, which showed moderate obstruction with no significant improvement post medication. T. 269. Dr. Miller opined that plaintiff should avoid any exposure to dust, irritants, and tobacco. *Id.*

On October 13, 2011, plaintiff presented at the DeGraff emergency room with shortness of breath. T. 308. Plaintiff had taken two nebulizer treatments at home without improvement. *Id.* While in the emergency room, Plaintiff received Solu-Medrol IV, as well as two nebulizer treatments, with no significant improvement. *Id.* An EKG test showed sinus tachycardia. T. 311. Plaintiff was assessed with (1) exacerbation of COPD; (2) asthmatic bronchitis; (3) symptomatic tachycardia secondary to inhaled bronchodilators; (4) history of allergies; and (5) history of tobacco abuse. *Id.* Plaintiff was admitted to the hospital for one week, until October 20, 2011. T. 316-17.

On November 3, 2011, plaintiff underwent an exercise stress test and myocardial perfusion study at DeGraff, both of which showed unremarkable results. T. 318, 320.

13

Plaintiff saw NP Moresco at TMP on November 11, 2011. T. 331. Plaintiff continued to be smoke-free at that time. *Id*. Plaintiff complained of wheezing and difficulty breathing. *Id*. On examination, diminished sound was appreciated over her lungs bilaterally. T. 332.

Plaintiff returned to TMP on January 12, 2012. T. 327. Plaintiff was still a non-smoker at that time, though she reported that she still craved nicotine. *Id*. On examination, diminished sound was again appreciated over her lungs bilaterally. T. 328.

On May 3, 2012, plaintiff was seen at TMP for an annual physical. T. 351-53. Plaintiff had resumed smoking at that time, though she claimed that she was "not [smoking] that much." *Id*. On examination, plaintiff exhibited inspiratory wheezes over her lungs bilaterally. *Id*.

On September 12, 2012, plaintiff was seen by NP Moresco. T. 345-46. Plaintiff complained of increased wheezing and shortness of breath. T. 345. On examination, diminished sounds with some fine crackles

14

and wheezing were appreciated over the lungs. *Id*. Plaintiff was given a nebulizer treatment with albuterol, which improved her condition. T. 346.

On September 20, 2012, Dr. Abialmouna reviewed and signed off on the Pulmonary Medical Source Statement completed by NP Moresco. T. 341-44.

B. <u>Relevant non-medical evidence.</u>

Plaintiff was born on May 11, 1958, and was 52 years old as of the alleged onset date of September 6, 2010. T. 44. Plaintiff is a high school graduate and has worked throughout her adult life. T. 122-37. Plaintiff most recently worked as a professional fundraiser from August 1993 to December 2000 and as a cage shift supervisor at the Seneca Niagara Casino from December 2002 to December 2010. T. 142. Plaintiff's employment with the Seneca Niagara Casino ended because they were unable to provide her with a smoke-free work environment. T. 44.

Plaintiff testified before the ALJ that she used a nebulizer once or twice a week, and that she took Xanax daily because the nebulizer made her "shaky." T. 45-46.

Plaintiff stated that she could keep her asthma under control "most days" and that she was currently smokiung half a pack of cigarettes per day.  T. 48-49.

II.  <u>Remand is required because the ALJ failed to properly consider medical listing 3.03.(B) for asthma.</u>

Plaintiff contends that remand is warranted for the following reasons: (1) to properly consider medical listing 3.03.(B) for asthma; (2) the ALJ failed to properly evaluate the opinion of treating physician Dr. Abialmouna and failed to weigh the opinion of consultative physician Dr. Miller at all; (3) the ALJ erred in failing to find plaintiff's heart disease, anxiety, and depression to be severe impairments; (4) the Commissioner violated SSR 96-3P and SSR 96-SP and relied on an RFC finding that is not based on substantial evidence; and (5) the ALJ failed to develop the record. Defendant responds that the ALJ's determination was based on substantial evidence in the record. The Court concludes that remand is warranted due to legal error because the ALJ failed to properly consider  medical listing 3.03.(B) for asthma and additional development of the record is necessary.

At step three of his analysis, the ALJ was required to assess whether plaintiff's impairments, considered alone or in combination, met or equaled the severity of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. At the time the ALJ issued his decision in this matter, medical listing 3.03(B) for asthma provided as follows:

> [A]ttacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §3.03(b) (as of December 6, 2012).[2]   In considering medical listing 3.03(B), the ALJ held that plaintiff's "asthma fails to

---

[2]

Medical listing 3.03(B) was amended effective October 7, 2016, and now requires three attacks within a twelve-month period, each of which must last at least forty-eight hours. However, in reviewing the Commissioner's decision, the Court applies the listing as it existed when that decision became final. *See Lowry v. Astrue*, 474 Fed. Appx. 801, 805 n. 2 (2d Cir. 2012) (where regulations governing the ALJ's evaluation of a claim are amended after the ALJ's decision, the court will "apply and reference the version ... in effect when the ALJ adjudicated [the claimant's] disability claim").

meet or equal the criteria [of this listing] . . . [because she does not] have attacks requiring physician intervention at least once every two months.  She has been hospitalized, but only twice since the alleged onset date." T. 31.

The ALJ's consideration of medical listing 3.03(B) failed to apply the proper legal standard, because the ALJ failed to acknowledge that medical listing 3.03(B) is met where a claimant has attacks requiring physician intervention at least six times per year, and not just when attacks occur once every two months. *See Green v. Colvin*, 2016 WL 943620, at *12 (W.D.N.Y. Mar. 14, 2016) (remand is required where ALJ does not clearly consider the criteria set forth in a medical listing); *see also Norman v. Astrue*, 912 F. Supp. 2d 33, 81 (S.D.N.Y. 2012) (the ALJ has an obligation to discuss the potential applicability of listing criteria and to provide an explanation of his reasoning as to why plaintiff's impairments do not meet or equal them).

Significantly, this is not a case in which it is clear from the record that application of the correct

legal standard could lead only to one conclusion. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (remand is not required "where application of the correct legal principles to the record could lead [only to the same] conclusion"). To the contrary, the record shows that plaintiff was hospitalized for asthma attacks on October 6, 2009; April 25, 2010; and September 9, 2010, for a total of at least five attacks (with the October 6, 2009 and September 9, 2010 hospitalizations each counting for two attacks, because they lasted for more than 24 hours). Plaintiff was also hospitalized on November 15, 2009, and January 14, 2010, but the administrative record is incomplete with respect to these hospital admissions. With respect to the November 15, 2009 admission, the record does not contain the discharge summary or nurses' notes, and the records that are present do contain references to plaintiff's COPD. The records for the January 14, 2010 admission are even more sparse, consisting solely of the results of an echocardiogram. Without complete records of these hospital admissions, the Court is unable to determine whether plaintiff in

fact had six attacks, as defined in medical listing 3.03(B), within a twelve month period.

"It is the rule in our circuit that the ALJ, unlike a judge in a trial, must . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding.  This duty arises from the Commissioner's regulatory obligations to develop a complete medical record before making a disability determination . . . and exists even when, as here, the claimant is represented by counsel." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (internal quotations omitted).  In this case, the ALJ was alerted to the missing records regarding the January 14, 2010 hospital admission by plaintiff's attorney (*see* T. 63), but did not seek any additional records.  While the ALJ is not obligated to seek further medical records where the record evidence is sufficient for the ALJ to make a disability determination (*see Martinez-Paulino v. Astrue*, 2012 WL 3564140, *14 (S.D.N.Y. 2012)), here, the missing records are critical to the assessment of whether or not

plaintiff's impairments meet or equal medical listing 3.03(B).

Defendant argues that remand is unnecessary in this matter because (1) plaintiff did not adhere to her prescribed medical regimen, inasmuch as she continued to smoke, and (2) plaintiff did not have six attacks after her disability onset date. These arguments are without merit.

First, with respect to the issue of smoking, the record shows that plaintiff did in fact make extensive efforts to quit smoking, including by taking Chantix and using NicoDerm patches, and that she was largely successful in doing so. While it is true that plaintiff suffered from occasional relapses, this Court cannot determine as a matter of law that these relapses constitute an unjustified failure to adhere to prescribed treatment. *See, e.g., Neely v. Astrue*, 2010 WL 3895349, at *2 (D. Md. Sept. 30, 2010) (ALJ erred in determining that claimant did not meet medical listing 3.03(B) for failure to comply with treatment plan because there are circumstances in which less than perfect compliance may

be justified).  Instead, the ALJ, as the fact-finder, must make that determination on remand.

Second, nothing in medical listing 3.03(B) (as it existed at the time of the Commissioner's final decision in this case) requires that the six attacks in question occur after the disability onset date.  To the contrary, the regulations make it clear that the criteria of a medical listing are considered separate and apart from the regulatory duration requirement.  *See* 20 C.F.R. § 404.1525(c)(3) (an impairment meets the requirements of a listing if it "satisfies all of the criteria of that listing" and "meets the duration requirement").  Notably, when medical listing 3.03(B) was amended in October 2016, language was added to expressly require that the attacks occur "within the period [the Commissioner] is considering in connection with [claimant's] application or continuing disability review."  20 C.F.R. Pt. 404, Subpt. P, App. 1, §3.03(b) (effective October 7, 2016). In other words, where the regulations are meant to impose a specific time frame within the criteria of a listing, they do so expressly.  The prior version of medical

listing 3.03(B), which applies here, contained no such time frame.  As a result, plaintiff was not required to show that all six of her asthma attacks occurred after her disability onset date.

Finally, the Court notes that plaintiff has requested that this matter be remanded for the calculation of benefits only.  However, as set forth above, there are issues in this case that require additional development of the record, a task which is left for the Commissioner on remand.  As a result, plaintiff's request for remand solely for the calculation of benefits is denied.

III. <u>The ALJ's RFC Finding, as modified by the Appeals Council, is not supported by substantial evidence.</u>

The ALJ found that plaintiff had the RFC to perform the full range of sedentary work. T. 31.  The Appeals Council modified the ALJ's RFC determination to provide that plaintiff "cannot have concentrated exposure to cold/heat; wetness; humidity; and fumes, gases[,] odors, dust, etc." T. 9.  Plaintiff argues that the RFC as modified is not supported by substantial evidence because none of the medical evidence of record supports a

limitation only on <u>concentrated</u> exposure to irritants. The Court agrees.

As the Appeals Council acknowledged in modifying the ALJ's RFC determination, the necessity for environmental limitations is well-supported by plaintiff's history of respiratory ailments. *See* T. 9. However, the environmental limitations imposed by the Appeals Council are not grounded in the medical evidence of record. Both treating physician Dr. Albiamouna and consultative physician Dr. Miller opined that plaintiff was required to avoid <u>any</u> exposure to respiratory irritants such as dust and chemicals. *See* T. 269, 343. The Appeals Council provided no explanation why it rejected those opinions and instead imposed a limitation only for concentrated exposure.

The Appeals Council, like the ALJ, is required to provide sufficient explanation for its determinations to permit a court to perform meaningful review. *See, e.g., Tuttle v. Colvin*, 2015 WL 4506715, at *5 (N.D.N.Y. July 23, 2015). Here, the Appeals Council simply added a limitation to the RFC without any explanation of how it

was reached or what evidence of record supports it.  The Appeals Council's "lack of explanation of its reasoning results in ambiguity that makes it impossible for a reviewing court to determine whether this conclusion is based on substantial evidence." *Id*.  Remand is therefore also required for further consideration of plaintiff's RFC, in the event the Commissioner determines that plaintiff's impairments do not meet or equal medical listing 3.03(B).

IV. <u>On remand, the Commissioner shall reconsider the proper weight to give the medical opinions of record and the severity of plaintiff's impairments in light of the record as a whole.</u>

As set forth above, plaintiff also argued that the Commissioner failed to give proper weight to the medical opinions of treating physician Dr. Abialmouna and consultative physician Dr. Miller, and erred in failing to find plaintiff's heart disease, anxiety, and depression to be severe impairments.  Because the Court has determined that remand is necessary for the reasons set forth above, it need not reach these issues. Instead, the Court instructs the Commissioner on remand

to reconsider these findings in light of the record as a whole.

## CONCLUSION

For the reasons stated above, the plaintiff's motion for judgment on the pleadings (Docket No. 5) is granted in part and denied in part, and defendant's cross-motion for judgment on the pleadings (Docket No. 11) is denied. This case is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

ALL OF THE ABOVE IS SO ORDERED.

S/ MICHAEL A. TELESCA
HONORABLE MICHAEL A. TELESCA
UNITED STATES DISTRICT JUDGE

DATED:  Rochester, New York
        March 28, 2017